IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:25-CV-6-FL

| | | |
|---|---|---|
| DAKOTA PATRICK JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion of Dakota Patrick Jones ("Plaintiff" or, in context, "Claimant") for judgment on the pleadings [DE-16] and supporting brief [DE-19] ("Pl.'s Brief"), and Defendant's responsive brief [DE-20] ("Def.'s Brief") in opposition. The time for filing responsive briefs has expired pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The motion and briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's motion [DE-16] be allowed in part, Defendant's brief [DE-20] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I.  STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on January 25, 2018, when he was 17 years old alleging disability beginning December 17, 2008, when he was eight years old.

Transcript of Proceedings ("Tr.") 86, 262-74.  His claim was denied initially.  Tr. 86-122, 170-87.  Plaintiff filed a request for reconsideration (Tr. 188-90), and was denied upon reconsideration on April 17, 2019 (Tr. 123-69, 191-98).  On June 18, 2019, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ").  Tr. 204-07.  A hearing before the ALJ, Joseph Brinkley, was held on June 30, 2020, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  Tr. 49-85.  On March 13, 2020, the ALJ issued a decision denying Plaintiff's request for benefits.  Tr. 12-48.  On May 15, 2020, Plaintiff requested a review of the ALJ's decision by the Appeals Council (Tr. 258-61), and this request for review was denied on January 27, 2021 (Tr. 1-6).

Plaintiff then filed a complaint in this court seeking review of the then-final administrative decision.  Tr. 945-55; *see Jones v. Kijakazi*, 2:21-CV-00017-BO (filed March 29, 2021).  On May 20, 2022, United States District Judge Terrence W. Boyle held a hearing on the motions.  *See Jones v. Kijakazi*, 2:21-CV-00017-BO [DE-25].  Judge Boyle issued an order remanding the case for further proceedings (Tr. 956-61) finding that the "ALJ's ultimate determination lacks a logical bridge from the medical evidence in this case.  *See* Tr. 961; *see also Jones v. Kijakazi*, No. 2:21-CV-17-BO, 2022 WL 4045494, at *1 (E.D.N.C. Sept. 2, 2022)).

On September 12, 2023, a second administrative hearing was held before the same ALJ, at which Plaintiff, represented by counsel, and a VE appeared and testified.  Tr. 859-901.  On October 23, 2023, the ALJ issued a decision denying Plaintiff's request for benefits.  Tr. 818-58.  Plaintiff then requested a review of the ALJ's decision by the Appeals Council, and on November 18, 2024, the Appeals Council issued a declination of exceptions to the final decision.  Tr. 809-17.  Plaintiff then filed her second complaint in this court seeking review of the final administrative decision.  [DE-1].

2

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole,

including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11-CV-00054, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012) (quoting *Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)).  Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level.  *Id.* at *1-2.

### III.  DISABILITY EVALUATION PROCESS

**A.      Disability evaluation process for children**

The Social Security Act ("Act") defines disability for children (*i.e.*, persons who have not attained the age of 18, 20 C.F.R. § 416.902) as having a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The disability regulations under the Act ("Regulations") provide for the payment of disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22.  20 C.F.R. § 404.350(a)(5) (claimant 18 older may be entitled to child's benefits based on the earnings record of an insured parent if she "[has] a disability that began before [she] became 22 years old.").  The Regulations further provide a three-step analysis that the ALJ must follow to determine whether a child is disabled.  An ALJ must consider the "whole child" when assessing disability.  *See* SSR 09-lp.

At the first step, the ALJ determines whether the child is doing substantial gainful activity. If the child is, the child is found not disabled.  20 C.F.R. § 416.924(a).

4

At the second step, the ALJ determines whether the child's impairment or impairments are severe. If they are not, the child is found not disabled. *Id.*

At the third step, the ALJ determines whether the child has an impairment or combination of impairments that meets or medically equals a Listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("Listings") or, if not, that is functionally equivalent to the Listings. *Id.* §§ 416.924(a), 416.926a(a).

The Listings consist of impairments, organized by major body systems that, for children, are deemed to cause "marked and severe functional limitations." 20 C.F.R. § 416.925(a). An impairment meets a Listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); S.S.R. 83-19, 1983 WL 31248 (1983). An impairment medically equals a Listing if medical findings establish that it is equal in severity and duration to the criteria for that Listing. *Sullivan,* 493 U.S. at 531; 20 C.F.R. § 416.926(a). It is not sufficient to show simply "that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531. An impairment is functionally equivalent to the Listings if it results in the requisite level of limitation in six specified functional domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being. 20 C.F.R. § 416.926a. To functionally equal the Listings, a claimant must be found to have either "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* A limitation is considered "marked" if it is more than moderate but less than extreme, and a limitation is "extreme" when it is determined to be more than marked. *Id.*

The burden rests on the claimant to show that an impairment or combination of impairments meets or medically equals a Listing or is functionally equivalent to the Listings. *See*

*Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Smith ex rel. B.M.M. v. Astrue*, Civ. No. 6:08–cv–06027, 2009 WL 2486055, at *6 (W.D. Ark. 12 Aug. 2009) (child's claim), *aff'd*, 379 Fed. Appx. 546 (8th Cir. 2010); *S.R. ex rel. R.R. v. Barnhart*, 371 F. Supp. 2d 796, 799 (W.D. Va. 2005) (child's claim). If such a showing is made by the claimant, an irrebuttable presumption of disability arises and benefits must be awarded. *S.R. ex rel. R.R.*, 371 F. Supp. 2d at 799.

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effects of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923; *see also* 20 C.F.R. § 416.924(a) (requiring the ALJ to "consider the combined effects of all [the claimant's] impairments upon [the claimant's] overall health and functioning"). If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

**B. Disability evaluation process for adults**

The disability determination for adults is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the

6

claimant can perform.  *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c).  This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique."  *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV.  ALJ'S FINDINGS

During the period under review, Plaintiff turned 18 and changed age categories, so the ALJ in this case evaluated Plaintiff under both standards.  After applying both of the above-described sequential evaluation processes, the ALJ found Plaintiff "not disabled" as defined in the Act.  Tr. 851.  At step one of both the childhood and adult disability evaluation processes, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.  Tr. 826.

The ALJ first turned to Plaintiff's claim of disability prior to reaching age 18.  The ALJ found that Plaintiff was a school-age child on December 22, 2017, the application date, attained the age of 18 on January 26, 2018, and had not attained age 22 as of December 17, 2008, the alleged onset date.  Tr. 826.

The ALJ determined that, prior to attaining age 18, Plaintiff had the following severe impairments: type I diabetes mellitus; gastroparesis; migraine headaches; attention deficit hyperactivity disorder; and obsessive-compulsive disorder.  Tr. 826.  The ALJ also found Plaintiff had the following non-severe impairments: spasmodic torticollis; autonomic neuropathy;

7

prostatitis; proteinuria; Pott's disease; amplified musculoskeletal pain; fatigue; bilateral shoulder region trigger points; bilateral wrist pain; bilateral knee pain; bilateral ankle pain; and bilateral foot pain with pes planus deformity.  Tr. 826.

The ALJ concluded these impairments, both physical and mental, were not severe enough, either individually or in combination, prior to Plaintiff reaching age 18,  to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 827.  The ALJ then found that Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of the listings under 20 CFR 416.924(d) and 416.926a).  Tr. 827.  Specifically, the ALJ found that prior to attaining age 18, Plaintiff had one marked limitation in the ability to care for himself, but less than a marked limitation in the other five domains.  *See* Tr. 833-39.

Accordingly, the ALJ found that because Plaintiff did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, Plaintiff was not disabled prior to turning 18 years old.

Turning to the adult disability sequential evaluation process, the ALJ found that since turning 18 years old, Plaintiff continued to have a severe impairment or combination of impairments, and had not developed any new impairments.  Tr. 840.  The ALJ determined that these impairments, both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 840.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself.  Tr. 841-

8

43.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform medium work[1] with the following limitations:

> frequent use of bilateral upper extremities for handling (or grasping), fingering, and feeling; occasional use of lower extremities for operating foot or leg controls; occasional climbing ramps or stairs; no climbing ladders, ropes, or scaffolds; no standing or walking on narrow slippery surfaces; working with exposure to no more than moderate noise or any exposure to unprotected heights or dangerous moving mechanical parts; and no work requiring binocular depth perception or binocular field of vision. [Plaintiff] has a reasoning level of two which, as defined in the Dictionary of Occupational Titles (DOT), denotes an ability to apply [common sense] understanding to carry out detailed but uninvolved oral and written instructions and to deal with problems involving a few concrete variables in or from standardized situations that may be encountered on the job. [Plaintiff] has the ability to do simple, routine, repetitive tasks in two-hour intervals and is limited to occasional direct interaction with the general public, coworkers, and supervisors and to performing jobs not involving a production rate or fast-paced assembly line work.

Tr. 843.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 849.

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

9

At step four, the ALJ concluded Plaintiff did not have any past relevant work pursuant to 20 CFR 416.965.  Tr. 849.  Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that, since the date Plaintiff turned age 18, there are jobs that Plaintiff can perform that exist in significant numbers in the national economy.  Tr. 849-51.

## V.  OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges the ALJ erred by: (1) "fail[ing] to follow the mandate of the remand from the United States District Court and Appeals Council"; (2) "[finding] that the [RFC] assessment was at the modified medium exertional level"; (3) "fail[ing] to properly assess [Plaintiff's] statements concerning the intensity, persistence and limiting effects of his symptoms and their consistency with the medical evidence and other evidence"; and (4) "fail[ing] to accurately set forth all [Plaintiff's] physical and mental limitations in the hypothetical question posed to the VE."  Pl.'s Brief [DE-19] at 13.[2]  Each will be discussed below.

## VI.  DISCUSSION

### A.    Child's insurance benefits

After completing the sequential evaluation process for Plaintiff's child's insurance benefits claim, the ALJ found that "[b]ecause [Plaintiff] did not have an impairment or combination of impairments that met, [or] medically equaled any listing or functionally equaled the listings, [Plaintiff] was not disabled prior to attaining age 18."  Tr. 840 (citing 20 C.F.R. § 416.924(a)).

Plaintiff does not make any arguments related to the standard for children's disability

---

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

10

claims and provides in a footnote to his brief that "[d]ue to the short duration [Plaintiff] was a 'child' after filing his application, the undersigned has focused the contentions on the adult disability." Pl.'s Brief [DE-19] at 1, n.1. The Commissioner argues that based on this footnote, "Plaintiff . . . waived any arguments concerning the ALJ's evaluation of the claim under the child standard for disability." Def.'s Brief [DE-20] at 8, n. 2 (citing *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017)).

The undersigned agrees with the Commissioner that based on Plaintiff's failure to raise any arguments under the child standard for disability, Plaintiff has waived any arguments under such standard. *See Grayson O Co.*, 856 F.3d at 316 ("A party waives an argument by failing to present it in its opening brief or by failing to develop [its] argument—even if [its] brief takes a passing shot at the issue.").

**B.      Remand directives**

Plaintiff contends that the ALJ erred by failing to follow the mandate of the remand from the United States District Court and Appeals Council. Pl.'s Brief [DE-19] at 13. The Commissioner counters that "the ALJ . . . issued a well written decision discussing the facts of this case and highlighting some of the very concerns as noted by the District Court." Def.'s Brief [DE-20] at 8. The Commissioner notes that "Plaintiff points to no language in the Commissioner's regulations requiring an explicit or detailed discussion of the District Court opinion." *Id.*

On August 31, 2022, United States District Judge Terrence W. Boyle remanded Plaintiff's disability claim to the Commissioner for multiple reasons. First, Judge Boyle questioned the ALJ's previous finding that "while plaintiff was a child and a teenager, there was occasional non-compliance with his insulin pump and injection usage." *See Jones v. Kijakazi,* No. 2:21-CV-17-BO, 2022 WL 4045494, at *3. Judge Boyle noted that these episodes of non-compliance "could

11

be explained either by [P]laintiff's youth or because of the lack of concentration actually caused by his diabetes when it is out of control." *Id.* With respect to the ALJ's focus on "the lack of diabetic related hospitalizations or use of emergency services for uncontrolled blood sugars," Judge Boyle found that this could be "explained by any number of reasons, including a potential desire to avoid costly emergency services." *Id.*

Judge Boyle next opined that "the ALJ failed to fully explain how [P]laintiff could perform modified medium work for an entire workday, or workweek, when plaintiff cannot stand and walk for six hours a day and has 2-3 migraines per week." *Id.* Specifically, Judge Boyle noted that "[P]laintiff's RFC did not reduce the time required to sit, stand, and walk in an 8-hour workday" and that "because of [P]laintiff's unpredictable spikes in blood sugar and resulting dizziness and lack of concentration, it appears that the evidence shows that [P]laintiff would be off task more than 10% of the day." *Id.*

Finally, Judge Boyle found that "given [P]laintiff's reports about his longstanding history of life-altering uncontrolled diabetes, the Court wonders how the ALJ concluded that [P]laintiff did not meet the diabetes Listing." *Id.*

1. **ALJ's responses to Judge Boyle's order**

a. **Non-compliance with insulin regimen**

In his second decision, the ALJ responded to Judge Boyle's directives regarding Plaintiff's noncompliance with his insulin regimen by noting that Plaintiff "admitted in September 2020 that he stopped Aimovig injections on his own because they did not seem to be helping and despite his mother's thoughts to the contrary." Tr. 845. The ALJ notes that in May 2020, Plaintiff reportedly responded to an episode of hypoglycemia by drinking a half glass of juice which improved his condition in 15 minutes. *Id.* The ALJ contends that "[t]he Court's speculation in this regard is not

12

consistent" with evidence that Plaintiff (i) "had less than marked limitations in attending and completing tasks as a child, although he did have marked limitations in caring for himself during that time" or (ii) "evidence that, as an adult, he has had no more than moderate limitations in remembering information, concentrating, and adapting or managing himself."  Tr. 845.

### b.  Reasons for lack of hospitalization

As noted above, Judge Boyle observed that Plaintiff's "lack of diabetic related hospitalizations or use of emergency services for uncontrolled blood sugars," could be "explained by any number of reasons, including a potential desire to avoid costly emergency services." *Jones v. Kijakazi*, No. 2:21-CV-17-BO, 2022 WL 4045494, at *3.  In his second decision, the ALJ responded that "this is merely speculative and inconsistent with the claimant's testimony at the most recent hearing that he has been on Medicaid for as long as he could remember."  Tr. 845; *see also* Tr. 871.

### c.  Explanation in support of modified medium RFC

Judge Boyle found the ALJ's initial discussion lacking with respect to "how [P]laintiff could perform modified medium work," when (i) "[P]laintiff cannot stand and walk for six hours a day and has 2-3 migraines per week"; (ii) [P]laintiff's "RFC did not reduce the time required to sit, stand, and walk in an 8-hour workday"; and (iii) that "[P]laintiff's unpredictable spikes in blood sugar and resulting dizziness and lack of concentration, [suggest] that [P]laintiff would be off task more than 10% of the day." *Jones v. Kijakazi*, No. 2:21-CV-17-BO, 2022 WL 4045494, at *3. The ALJ argues in response that the court's order "presumes [Plaintiff's] alleged limitations with respect to his abilities to stand and walk, and as to the occurrence and frequency of his headaches, are accurate," but that "the objective medical evidence does not support [Plaintiff's] statements about the presence, intensity, persistence, and limiting effects of his symptom allegations, as

13

further discussed [in the ALJ's second decision]."  Tr. 846.

### d.  Listing

In response to Judge Boyle's observation that "given [P]laintiff's reports about his longstanding history of life-altering uncontrolled diabetes, the Court wonders how the ALJ concluded that plaintiff did not meet the diabetes Listing," *Jones v. Kijakazi*, No. 2:21-CV-17-BO, 2022 WL 4045494, at \*3, the ALJ provides that the medical evidence "does not show that [Plaintiff] has had sufficient episodes of hyperglycemia or chronic complications of diabetes that would meet the requirements of applicable [Listings]."  Tr. 840.

### 2.  Plaintiff's arguments

After summarizing Judge Boyle's directives and the ALJ's responses, Plaintiff concludes his contentions in this section with the following arguments:

> For these reasons and the reasons that follow, [Plaintiff] contends that the ALJ ignored the findings and mandate of the remand of the United States District Court. The ultimate determination of the ALJ failed to follow the review and findings of the District Court and continues to lack a logical bridge from the medical evidence in this case.  The decision of the ALJ is not supported by substantial evidence.

Pl.'s Mem. [DE-19] at 30-31.

As Plaintiff's entire argument previous to this excerpt consists of a summary of Judge Boyle's findings and the ALJ's responses, the substance of "these reasons and the reasons that follow" is unclear.  The undersigned therefore construes Plaintiff's argument as being, that to the extent the court finds Plaintiff's arguments in other sections of his brief to be meritorious, these would suggest that the ALJ did not correctly follow Judge Boyle's directives and would constitute an additional basis of remand.  As Plaintiff's arguments in this section appear dependent on the merit of his arguments in other sections, the court need not consider this argument separately.

To the extent Plaintiff intended this section to represent an independent argument, the

14

undersigned finds that Plaintiff has failed to sufficiently articulate any such argument to allow the court's analysis and therefore finds that any such arguments are waived. *See Harris v. Kijakazi*, No. 21-1853, 2022 WL 2987928, at *2 (4th Cir. July 28, 2022) (unpublished) (finding that "[claimant's] failure to explain his argument or support it with citations to a voluminous record renders review impossible[, . . . and] that [claimant] has waived his argument . . . .) (citing *Grayson O Co.*, 856 F.3d at 316; *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.")).

**B.    RFC**

Plaintiff contends that the ALJ erred by finding that the RFC assessment was at the modified medium exertional level. Pl.'s Brief [DE-19] at 13. Specifically, Plaintiff argues that

> [i]n order to perform the medium work, [Plaintiff] must be able to stand and walk for 6 hours in an 8-hour workday. [Plaintiff] contends that the consistent medical evidence corroborated by his hearing testimony, demonstrates that he cannot perform the physical and mental requirements of modified medium work because he cannot stand or walk for six hours in an eight-hour workday, he cannot lift and carry 50 pound on a frequent basis and would have great difficulty bending, stooping, kneeling, crawling and crouching on a frequent basis and would be off task more 10% of the workday, absent from work more than 1 days per month and unable to focus and concentrate for two hour intervals.

Pl.'s Brief [DE-19] at 33.

The Commissioner counters that Plaintiff's argument "fails both because it misconstrues the nature of this Court's review and because the evidence in the record supports the narrative RFC discussion the ALJ supplied with his decision." Def.'s Brief [DE-20] at 9.

Similar to Plaintiff's first argument, Plaintiff's argument  here is derivative of, and dependent upon, the court finding merit in his argument. In the next section, the undersigned analyzes plaintiff's contention that the ALJ failed to appropriately consider Plaintiff's statements about intensity, persistence and limiting effects of symptoms. In the instant argument, Plaintiff

15

does not (i) articulate any medical evidence that the ALJ failed to consider, or (ii) otherwise specify "consistent medical evidence . . . [, which] demonstrates that [Plaintiff] cannot perform the physical and mental requirements of modified medium work." Pl.'s Brief [DE-19] at 33.

The undersigned again finds that to the extent Plaintiff intended this argument to contain an independent basis for remand he has failed to sufficiently develop such argument to allow the court's consideration and has accordingly waived any such argument. *See Harris*, 2022 WL 2987928, at *2; *Grayson O Co.*, 856 F.3d at 316; *Krell*, 931 F.3d at 586 n.1.

**C.      Statements about intensity, persistence and limiting effects of symptoms**

Plaintiff contends that the ALJ erred by failing to properly assess his statements concerning the intensity, persistence, and limiting effects of his symptoms and their consistency with the medical evidence and other evidence. Pl.'s Brief [DE-19] at 13. Specifically, Plaintiff argues that Plaintiff's "symptoms and functional limitations were erroneously minimized, ignored and rejected by the ALJ who was 'playing doctor' contrary to the regulations and case law." *Id.* at 36. Plaintiff argues that "[t]he ALJ has an obligation to consider all of the relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Id.* at 22 (quoting *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir 2017)).

The Commissioner responds that "[c]ontrary to Plaintiff's arguments, the ALJ's decision shows that he followed both steps of [the two-step symptom analysis process] and provided substantial evidence in support of his conclusions." Def.'s Brief [DE-20] at 14.

The regulations provide "a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c)); *see also Craig*, 76 F.3d at 594 ("Under

16

these regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process."). As explained by the Fourth Circuit, "[f]irst, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*.'" *Craig*, 76 F.3d at 594 (emphasis in original) (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)). "Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Lewis*, 858 F.3d at 866. "The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." *Id.*

In assessing a claimant's credibility, an ALJ is not required to accept a claimant's statements at face value. *Howley v. Colvin*, No. 5:12-CV-260-FL, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 25, 2013). Generally, "[a]n ALJ may find a claimant's statements regarding the severity of [his] symptoms less credible if these statements are inconsistent with medical evidence in the record and if the ALJ explains how [he] weighed all of the relevant evidence, including the claimant's statements." *Brooks v. Berryhill*, No. 2:16-CV-80-FL(2), 2018 WL 944382, at *4 (E.D.N.C. Jan. 23, 2018) (citing SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015), *report and recommendation adopted*, No. 2:16-CV-80-FL, 2018 WL 943935 (E.D.N.C. Feb. 16, 2018). An ALJ's observations concerning questions of credibility are entitled to great weight. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). Yet an ALJ may not discredit a claimant's "statements about the intensity and persistence of [] pain or other symptoms or about the effect [] symptoms have on [their] ability to work *solely* because the available objective medical evidence does not substantiate [the] statements." *Lewis*,

17

858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)) (emphasis added). In discrediting a claimant's testimony, an ALJ must be sure to articulate what specific facts discredited the claimant. *Id.* (citations omitted); *Cobb v. Colvin*, 4 F. Supp. 3d 786, 790 (E.D.N.C. 2014).

In his decision, the ALJ summarized Plaintiff's testimony from the second administrative hearing that "he could not sit for a long time, and that he could not stand more than ten minutes or walk more than 10-15 minutes before becoming dizzy." The ALJ found these subjective limitations to be "exaggerated as they are not at all consistent with the medical evidence and other evidence of record." Tr. 849. The ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

In support of his findings, the ALJ cites observations from Dr. Shawne Bryant's ("Dr. Bryant") consultative exam in April 2018, that although Plaintiff "complained of migraine headaches and abdominal pain, his neurological exam was unremarkable with intact cranial nerves, intact sensation and reflexes, a steady and symmetric gait, and good hand-eye coordination and he was able to hop up onto the exam table." Tr. 828-29. The ALJ also cites Dr. Bryant's findings that

> [Plaintiff had] full muscle 5/5 strength throughout . . . [his] fine and gross manipulative abilities were grossly normal and that he was able to lift, carry, and handle light objects . . .[h]is tandem walking was normal, he was able to walk on his heels and toes with ease, and he could stand and hop on one foot bilaterally . . . [h]e was able to rise from a sitting position without assistance and he was able to squat and rise from that position and get up and down from the exam table with ease.

Tr. 829.

The ALJ noted the findings by physician's assistant Lindsay Howe from 2019 that Plaintiff

18

"had intact cranial nerves, intact sensation and reflexes, no abnormalities of movement, intact coordination, normal muscle tone and bulk, full 5/5 muscle strength throughout, and normal gait and station" and from July 2020 that notwithstanding Plaintiff's reports of "dizziness, shortness of breath, and vision disturbance, . . . [h]is musculoskeletal and neurological exams were normal with a normal gait."  Tr. 829.

The ALJ cited findings from Dr. Lindsay White, a cardiologist, in August 2021 of unremarkable "musculoskeletal and neurological exams . . . with a normal gait and station" and that [Plaintiff's] hand grips were firm and equal, and that he moved all his extremities well."  Tr. 830.  The ALJ notes that in January 2023, Plaintiff was advised "to walk or perform low-impact exercise for 30 minutes three times a day to help strengthen his joints and improve his endurance."  Tr. 830.

The ALJ also observed that "[d]uring both [administrative] hearings, [Plaintiff] did not appear to have any significant episodes of severe headache, dizziness, vision problems, or any shaking or vomiting commonly associated with gastroparesis" and "appeared able to understand all questions asked of him and to state his medical history in an articulate fashion with no evidence of any difficulties paying attention or remembering."  Tr. 849.

Yet there are inconsistencies in the record, which the ALJ does not reconcile.  For example, in addition to records citing normal gait and station mentioned above, there are other records providing that Plaintiff presented with "imbalance/unsteady gait."  *See* Tr. 761 (Sentara Neurology Specialist record from October 30, 2019)); *cf. also* Tr. 1194 (Kristin Kaul, M.S., consultative psychological interview and testing records observing that "walking slowly with an uneven gait").[3]

---

[3] As Ms. Kaul is a mental health professional, she was not qualified to opine on Plaintiff's physical impairments, and the ALJ was not required to articulate how she considered such evidence.  *See* 20 C.F.R. § 404.1520c(d); *Castillo v. Colvin*, No. CV 15-07061-DFM, 2016 WL 5019090, at *8 (C.D. Cal. Sept. 19, 2016),

19

The ALJ does not mention or discuss this reference to "imbalance/unsteady gait."

Similarly, while the ALJ noted an absence of certain symptoms at the two administrative hearings as discussed above, the ALJ does not address that he was inclined at both hearings to provide Plaintiff opportunities to stand up to alleviate any discomfort. *See* Tr. 56 ("[[I]f by chance you feel that you're going to want to stand at any time, you can. Okay? You don't have to sit throughout this hearing."); Tr. 886 (Plaintiff: "I've felt like I should get up and stretch for a while now, but I've refrained from doing so," . . .; ALJ: "And you can stand up and stretch if you so desire."). These provisions appear relevant to Plaintiff's subjective limitations in his ability to sit. *Cf.* Tr. 886 (Plaintiff testifying that he can only sit approximately 15 minutes at a time due to pain).

Additionally, the ALJ does not mention that the second administrative hearing was interrupted, ostensibly as a result of fluctuations in Plaintiff's blood sugar. *See* Tr. 884 (Observer: "Are you okay?"; Plaintiff: "It's 67 and dropping"; . . . "ALJ: "We're going to go off the record" . . . ALJ: "Okay. So we're back on the record. And Counsel was asking [Plaintiff] questions, and [Plaintiff] had indicated that his sugar level had dropped to the point that he needed some medical attention, some food or something to help pick it back up."); *see also* Pl.'s Brief [DE-19] at 5 (Plaintiff summarizing this same incident in his brief). This episode appears relevant to the issue of whether and how long Plaintiff would be off-task during a normal workday.

To be clear, this evidence is not dispositive on the question of Plaintiff's credibility, limitations or disability. Moreover, an ALJ is not required to discuss every piece of evidence in

---

*judgment entered*, No. CV 15-07061-DFM, 2016 WL 5110523 (C.D. Cal. Sept. 19, 2016) (noting that the ALJ properly ignored the portions of a psychologist's opinion where "Dr. Wendel went beyond merely assessing the impact of [the claimant's] physical symptoms on her mental condition to opining on her physical symptoms themselves."); *Bollinger v. Barnhart*, 178 F. App'x 745, 746 n.1 (9th Cir. 2006) ("[T]he ALJ properly discounted [an] opinion . . . because Dr. Brown's opinion regarding [the claimant's] physical limitations was beyond her professional expertise as a Ph. D. psychologist.")

20

the record.  *See Reid v. Comm'r of Soc. Sec.,* 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). Yet before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence.  *See Sterling Smokeless*, 131 F.3d at 439-40. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  "Assessing the probative value of competing evidence is quintessentially the role of the fact finder.  We cannot undertake it in the first instance."  *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

Accordingly, the undersigned RECOMMENDS REMAND on this issue.  On remand, the ALJ should consider the evidence discussed above as well as all other relevant evidence in accordance with the applicable law and regulations.  The ALJ should also include a narrative discussion of how the evidence supports the conclusions reached, in order to facilitate meaningful review if the case is again before the court.  *See Monroe v. Colvin*, 826 F.3d 176, 189;  *DeLoatche*, 715 F.2d at 150 ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator.").

**D.      Hypothetical question posed to the VE**

Plaintiff contends that the ALJ erred when he failed to accurately set forth all of Plaintiff's physical and mental limitations in the hypothetical question posed to the VE.  Pl.'s Brief [DE-19] at 13.  The Commissioner counters that "[a]s the decision demonstrates, substantial evidence supports the ALJ's RFC finding and questions to the vocational expert."  Def.'s Brief [DE-20]at 20.

The undersigned construes Plaintiff's argument as contending that any failure to

appropriately consider Plaintiff's subjective limitations in the RFC is not harmless as certain limitations alleged by Plaintiff would preclude competitive employment. *See* Tr. 897-900 (VE testifying that any of the following would preclude competitive employment when otherwise combined with Plaintiff's RFC and relevant characteristics: being off-task greater than 10% of an 8-hour workday, missing more than one day per month, alternating between standing and sitting every 20 minutes, only occasional handling, grasping, fingering, feeling the need to lay down, and the inability to concentrate for up to two hours).

The undersigned agrees that the errors identified in the previous section are not harmless based on the VE's testimony. To the extent that Plaintiff is attempting to argue that the VE's testimony constitutes an independent basis for remand, the undersigned has not discerned any argument to this effect in Plaintiff's brief. *See Harris*, 2022 WL 2987928, at *2; *Grayson O Co.*, 856 F.3d at 316; *Krell*, 931 F.3d at 586 n.1.

**E.     Remand and reversal remedies**

Plaintiff expressly "requests that the District Court grant the Plaintiff's motion for Judgment on the Pleadings, reversing the decision of the ALJ *without remand* and direct a finding that [Plaintiff] is disabled under the Social Security Act and regulations." Pl.'s Brief [DE-19] at 40. "The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one that 'lies within the sound discretion of the district court.'" *Perry v. Colvin*, No. 5:13-CV-87-BO, 2014 WL 1056736, at *3 (E.D.N.C. Mar. 18, 2014) (quoting *Edwards v. Bowen*, 672 F.Supp. 230, 237 (E.D.N.C. 1987)). Reversal for award of benefits rather than remand is appropriate when "[o]n the state of the record, [Plaintiff's] entitlement to benefits is wholly established." *Crider v. Harris*, 624 F.2d 15, 17 (4th Cir. 1980). A court may "reverse without remanding where the record does not contain substantial evidence to support a decision denying

22

coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir.1974). Conversely, [r]emand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from 'meaningful review.'" *Perry v. Colvin*, No. 5:13-CV-87-BO, 2014 WL 1056736, at *3 (E.D.N.C. Mar. 18, 2014) (quoting *Radford v. Colvin*, 734 F.3d 288, 296.

The undersigned does not find that Plaintiff has demonstrated the high bar necessary to warrant reversal. While the ALJ's decision suffers from deficiencies for the reasons provided above, the record is not so one-sided so as to wholly established Plaintiff's entitlement to benefits. Accordingly, the undersigned RECOMMENDS that Plaintiff's request for reversal *without remand* be DENIED, and that this case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## VII. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's motion [DE-16] be ALLOWED IN PART, Defendant's brief [DE-20] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 9, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence;

23

or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 14 days from the filing of the objections or March 16, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 27th day of February, 2026.

_____
Brian S. Meyers
United States Magistrate Judge

24